BOARDMAN (ATKINSON v.). See Cases Nos. 607 and 608.

## Case No. 1,585.

BOARDMAN et al. v. The BETHEL.

[17 Betts, D. C. MS. 58.]

District Court, S. D. New York. Nov. 22, 1849.

SALVAGE—WHAT CONSTITUTES—VESSEL AGROUND —USE OF TACKLE—TENDER—WHEN A BAR.

[1. Rescuing a stranded vessel from impending peril is a salvage service, though the service was not indispensable nor attended with danger.]

[2. Giving the benefit of skill and experience and other incidental acts of relief may constitute a salvage service, though there is no actual labor or effort.]

[3. Employment of wrecking tackle, under an agreement to arbitrate the value of services rendered, is a salvage service, and not a hiring of the articles on a quantum meruit.]

[4. The tender of adequate compensation for salvage service, without deposit in court before answer, is no bar to an action for such service.]

[In admiralty. Libel for salvage by William Boardman and others, owners of the schooner Van Landt, against the schooner Bethel. Decree for libellants.]

BY THE COURT. Salvage is claimed by the libellants, as owners of the schooner Van Landt, for services rendered to the schooner Bethel.

The Bethel, loaded with sugar and molasses, was stranded outside Sandy Hook on the night of the 16th of February last. She was driven head on the bar in a northeast wind, and lay with her stern exposed to the wind and sea. The weather was cold, wind fresh, with appearance of a gale and snow. At 11:30 the next morning an agent of the underwriters came to the Bethel, and, at the request of her master, attempted with a gang of men to get her off. They found her on the outer bar heading to the shore, and about thirty fathoms from the beach at low water. She had then four feet of water round her, was tight and sound, and the tide was rising. The agent supposed she could be got off with the assistance at his command on the full tide. Her deck load of molasses was got ashore, and arrangements made to heave her off.

The libellants owned the wrecking boat or schooner Van Landt, of 40 tons, which was fully fitted out with proper working apparatus, and was on a voyage to Cape Henlopen, with a view to wrecking services. In the afternoon of the 17th of February the Van Landt anchored inside the Hook, and her master went to the Bethel to offer assistance. An agreement was then made between him and the master of the Bethel to get the latter off for the sum for $500. the expense of discharging her cargo to be borne by her master if it became necessary to unload her. At the suggestion of the agent of the underwriters, Captain Brewster cancelled this agree-

ment, and engaged, if his schooner was not got off by the agent at full tide, to employ the Van Landt, and pay what should be decided by two men in Wall street to be proper. There is a disagreement in the evidence as to the terms upon which the Van Landt and her apparatus was employed, by in my judgment the testimony of Captain Tripp to the terms of the bargain not contradicted by Captain Brewster is more reliable evidence of its terms than the impression and understanding of Mr. Wardell (the agent), who did not hear the first agreement. Capt. Tripp's statement of the method by which his compensation was to be fixed under the agreement finally made seems corroborated by the fact that a reference was framed and proceeded in conformably to it in New York, but was broken up by either the nonagreement of the referees or the withdrawal of the claimants from it. I hold the fair bearing of the proofs establishes an undertaking by Capt. Brewster with Capt. Tripp to employ the latter with his wrecking apparatus in getting the Bethel off in case Mr. Wardell should fail doing it on the tide then making, and that the agreement was not, as Wardell interpreted it, for Tripp to furnish his anchors and cables, and to receive compensation for their use only. Mr. Wardell having failed getting the Bethel off, and a cable furnished for the purpose by a revenue cutter having parted, on the 18th of February the Van Landt came round and placed her anchor and supplied her cable, and the Bethel was in the course of the afternoon hauled off. There is again a clashing of testimony as to the parts taken by Wardell and Tripp respectively in this service, and which of them was officially in command. It is not important in my opinion to adjust that difference. The testimony is clear to prove that Tripp was active in assisting and directing in the operation of hauling her off and navigating her within the Hook that night. The next morning she was delivered up to Capt. Brewster, or the agent of the underwriters, and brought to the city. A compensation of $250 was tendered the libellants, which they refused to accept it.

Two answers were interposed to the libel, one by the consignees of the schooner and the other by the consignees of the cargo. They rest on no personal knowledge of the facts attending the service, and are given upon information and belief. The position taken on the defense is that the schooner was not wrecked, and that no salvage services were rendered by the libellants. All they did was to supply one line, a cable anchor, and perhaps blocks, &c., for the use of which $150 would be an ample compensation. A great mass of testimony is put in by the parties on those points.

My conclusion from the results of the whole evidence is that the aid given on the occasion by Capt. Tripp and the schooner Van Landt was a salvage service, for which they are entitled to a reasonable recompense. Without examining at large the various propositions advanced on the argument, I shall indicate briefly the principles upon which this decision is placed.

1st. I consider the service rendered opportune and valuable to the Bethel and her cargo, and that they were by the aid of the libellants relieved from a situation of much peril, considering the season of the year and the then state of the weather. But I do not regard the intervention of the Van Landt as indispensable to the safety of the Bethel, or that the services were rendered with any considerable danger to the lives or property of the salvors. The services did not occupy over 8 or 9 hours, the main labor being performed by Mr. Wardell and his gang of men. No one from the Van Landt except Capt. Tripp was engaged on board the Bethel. The Van Landt was, however, brought round with anchor and cable, and her crew assisted in carrying out and placing the anchor, weighing 2,200 lbs., and connecting the cable with it so as to enable those on the Bethel to haul, and in working the Van Landt back to her anchoring place.

It is a mistake to suppose a stranded vessel must be technically wrecked in order to render her rescue a salvage service. That her position is dangerous, and she is aided by others, when in impending peril, is sufficient to clothe those who come to her relief with the character of salvors. The Traveler, 3 Hagg. Adm. 120; Vromo Margaretha, 4 C. Rob. Adm. 103.

Nor need the services be rendered by actual labor and effort applied by the salvors to the salved vessel. Incidental acts tending to her relief and aid will be treated as of the same effect.

Thus, a vessel coming into port, and apparently in distress, was boarded by the libellants in a fishing smack, under circumstances of exposure and danger, and an order taken to a steam tug to come out and tow her in. The captain of the vessel swore she was in no danger, and that he gave directions to the libellant not to have the steamer come out, unless she came out immediately and in case the weather should moderate. The steamer went out from Ramsgate pursuant to the order, accompanied by the master of the smack, and the next day towed the vessel up to the port of London. A tender of 10 pounds was made to the libellants, which they refused to accept. The court held that they were salvors, and the tender was inadequate, and awarded them 40 pounds. The Ocean, 2 W. Rob. 91. So a lugger with a crew of five men were engaged by a vessel off Dungerness in want of an anchor, to bring one off to her from Dover to the South Dover. The lugger procured the anchor, and cruised all night without finding the vessel, and the next morning put it on board her. For this service 35.10 pounds was tendered. On a suit for

salvage the high court of admiralty awarded 60 pounds for salvage and costs. The Hector, 3 Hagg. Adm. 90.

2. I do not think that the beneficial services were solely in the use of the anchor and cable supplied to the Van Landt as Capt. Tripp aided on board the Bethel by his skill and experience in hauling her off, and also in navigating her round the Hook to a place of safe anchorage.

But independent of his personal services on the Bethel, I think the employment of the tackle of the Van Landt under the circumstances was a salvage service, and not a hiring of those articles on a quantum meruit.

3. The tender of $250, if an adequate compensation, was not so followed up as to serve as a bar to the action. It is directed by standing rule 72 that a tender inter partes shall be of no avail on defence or in discharge of costs unless on suit brought, and before answer, plea, or claim filed in the same tender is deposited in court to abide the order or decree to be made in the matter. Nothing more was done than to offer the $250 to the libellants. That tender unquestionably amply covered the value of the cable and anchor considered as hired for the use of the Bethel, but in my judgment that is not the true relation of the parties, and the compensation is to be adjusted on the footing of salvage, and not on that of work and labor merely, or of hiring out the use of tackle.

There is deficiency in meeting out the appropriate recompense as the principles governing salvage award. The case is to be clothed with the character of salvage; still there are no features in it magnifying it to one demanding extraordinary rewards. The Van Landt and her fitments were devoted to wrecking employments, and she is entitled to reasonable encouragement in the use of her capabilities. This particular is generally adverted to as a ground for according more liberal pay than to ordinary vessels coming casually to aid one in distress, because the means a wrecker or pilot boat or steamer has at her command will tend more certainly to the security of life and property in peril. The Neptune, W. Rob. Adm. 300; The Duke of Clarence, Id. 246; The Frederick, Id. 16; Joseph Harvey, 1 C. Rob. Adm. 306, note; The Raikes, 1 Hagg. Adm. 246.

The Bethel and cargo are stated in the answer to be worth $6575. The captain first engaged to pay $500 for getting her off. He afterward withdrew the offer, although it had been accepted, and agreed to leave the subject to arbitration. This was assented to by the libellants, but its fulfillment has been declined by the claimants. A party is not to be held to any loose conversation, or perhaps perceive stipulations offered previous to the service (1 Sumn. 210 [The Emulous, Case No. 4,480]); yet it is entitled to be taken into consideration to show the estimate then put by the party on the hazard his property was encountering, and I cannot but regard the arrangement every way reasonable on both sides, as it was to abide the efforts of the party then in charge of the vessel to get her off with the next high tide. That effort failed, and she was forced further upon the shoal. The undertaking of the libellants to save her and cargo, as it might involve long services and be finally unsuccessful, and thus without remuneration to them, entitled them, in my opinion, to that amount.

I shall therefore decree that these libellants recover salvage to the amount of $500 and their taxed costs.

---

### BOARD OF.

[Note. Additional cases cited under this title will be found arranged in alphabetical order under the names of the respective boards. See note under "Bank."]

---

### BOARD OF COM'RS OF.

[Note. Cases cited under this title will be found arranged in alphabetical order under the names of the respective boards.]

---

### BOARD OF COUNTY COM'RS.

[Note. Cases cited under this title will be found arranged in alphabetical order under the names of the counties; e. g. "Board of County Com'rs of Arapahoe County. See Arapahoe County."]